IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY and LOIS RESSLER, Co-Executors of the Estate of LAWRENCE J. KOSKO and SUE R. KOSKO,<br><br>      Plaintiffs,<br><br> -vs-<br><br>ENTERPRISE RENT-A-CAR COMPANY, et al.,<br><br>      Defendants. | Civil Action No. 06-562 |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

Plaintiffs, Harry and Lois Ressler, co-executors of the estate of Lawrence J. and Sue R. Kosko, ("Plaintiffs") allege claims against Defendant Enterprise Rent-A-Car Company for breach of contract; against Defendants Cambridge Integrated Services Group, Inc. ("Cambridge"), Empire Fire and Marine Insurance Company ("Empire Fire and Marine"), and Empire Indemnity Insurance Company ("Empire Indemnity") for insurance bad faith; and against all Defendants for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 202.1, *et seq.*, the Pennsylvania Unfair Insurance Practices Act, 40 Pa. Stat. § 1171.5, and the Alaska Unfair Claim Settlement Practices Act, Alaska Stat. § 21.36.125. Specifically, Plaintiffs seek to recover damages resulting from the alleged improper handling of a claim under a personal accident insurance policy purchased by the Plaintiffs'

1

decedent, Lawrence Kosko, when he rented a car in Alaska in September 2005.

Pending before the Court is a Motion for Summary Judgment filed by Defendants seeking dismissal of Plaintiffs' claims in their entirety. (Docket No. 19). Plaintiffs oppose Defendants' Motion. (Docket No. 24). After careful consideration of the parties' submissions and for the reasons set forth below, Defendants' Motion for Summary Judgment (Docket No. 19) is granted.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

Unless otherwise indicated, the following material facts are undisputed. I will view any disputed facts in the light most favorable to Plaintiffs.

On September 25, 2005, Lawrence and Sue Kosko were involved in a fatal automobile accident in Alaska. Lawrence Kosko was the driver and Sue Kosko the passenger in an automobile rented from Enterprise Leasing Company.[1] At the time Mr. Kosko rented the vehicle from Enterprise, he purchased the optional personal accident insurance ("PAI") benefit. The PAI benefit provided for benefits in the event of death of $100,000 for the driver and $10,000 for each passenger. The policy excludes coverage for, inter alia, deaths or injury caused by suicide or attempted suicide or accidents which occur while the driver is "under the influence of alcohol or narcotics, unless prescribed by a physician."

Plaintiffs, who are co-executors of the Koskos' estates, retained attorney

---

[1] The rental agreement indicates that Enterprise Leasing Company is an affiliate of Enterprise Rent-A-Car Company, the named Defendant in the Complaint. For convenience, I refer to both entities as "Enterprise" herein.

Matthew D'Emilio to handle various matters related to the deaths of the Koskos, including, but not limited to, raising the estates.  Attorney D'Emilio was the only person who communicated with Enterprise or Cambridge (the third-party administrator for the handling of PAI claims arising out of accidents involving Enterprise customers) regarding the PAI claims on behalf of the Koskos' estates.

Sometime in early November 2005, a representative from Enterprise told Attorney D'Emilio that Mr. Kosko had purchased insurance with death benefits when he rented the vehicle.  On November 17, 2005, Attorney D'Emilio faxed a letter of representation to Enterprise.  Tammilee Anderson, of Enterprise Loss Control, testified that she mailed a blank PAI claim form and a copy of the front page of the rental contract to Attorney D'Emilio on November 21, 2005.[2]

The claim form identifies Cambridge as the entity designated to receive the completed form and the required attachments.  The claim form also provides Cambridge's address, toll-free telephone number, and facsimile number. The claim form provides that "[e]ach injured party is required to submit a claim form and all areas of the form must be completed for the claim to be processed."  The instructions for completion of the form direct the claimant to "attach a copy of the signed rental agreement, police, rental agency accident reports . . . ."  The form also states that "[i]f Deceased was the Driver/Additional Driver, please provide a copy of the Coroner's Report/Toxicology Report" and requires the claimant to attach a copy of the certified death certificate and proof of estate designation.

---

[2] A copy of the claim form is attached as Exhibit C to Defendants' Answer.  (Docket No. 4).

3

On February 3, 2006, Attorney D'Emilio sent a completed PAI claim form for Lawrence Kosko to Cambridge with many of the required documents, but not a copy of the police accident report. Defendants also claim that Attorney D'Emilio did not include a copy of the coroner's report for Mr. Kosko. Attorney D'Emilio testified that he attached a copy of the coroner's report to the February 3, 2006 claim form. Defendants disagree and contend that Cambridge first received the coroner's report from Attorney D'Emilio via fax on April 7, 2006.[3]

Cambridge assigned Yalonda Robinson and Minyan Wiilis to handle the PAI claim. On February 9, 2006, Cambridge requested that a copy of Mr. Kosko's coroner's report be ordered from ChoicePoint, its vendor. Ms. Robinson testified that she advised Attorney D'Emilio during a telephone conversation that Cambridge was requesting a copy of the coroner's report for Mr. Kosko. On February 23, 2006, Cambridge ordered the Alaska State Police Accident Report from ChoicePoint.

On or about March 8, 2006, Ms. Willis wrote to Attorney D'Emilio and advised him, inter alia, that the claim was currently under investigation and review and that Cambridge had requested the police and coroner's reports. The letter also asked Attorney D'Emilio to complete a claim form for the Estate of Sue Kosko. On March 15, 2006, Attorney D'Emilio sent Cambridge the claim form and medical examiner's report for the Estate of Sue Kosko. On or about March 24, 2006, Cambridge received the Alaska State Police Accident Report for the Koskos' accident. Attorney D'Emilio

---

[3] A copy of the coroner's report containing a facsimile stamp from Attorney D'Emilio dated April 7, 2006 is attached as Exhibit F to Defendants' Answer. (Docket No. 4). There is no other documentary evidence regarding date of receipt of the report. For reasons set forth more fully infra, this disputed fact is immaterial.

4

faxed a copy of the coroner's report for Mr. Kosko to Cambridge on April 7, 2006.[4]

Cambridge mailed Attorney D'Emilio PAI benefit checks dated April 24, 2006 in the amount of $100,000 and $10,000 for the benefit of the Estates of Lawrence Kosko and Sue Kosko, respectfully. The PAI was underwritten by Defendant Empire Fire and Marine Insurance Company.[5]

B. PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint against Defendants in this court on April 26, 2006. (Docket No. 1). Defendants answered Plaintiffs' Complaint on July 21, 2006. (Docket No. 4). On April 16, 2007, Defendants filed the instant Motion for Summary Judgment, Brief in Support, Concise Statement of Material Facts, and Appendix. (Docket Nos. 19-22). On May 14, 2007, Plaintiff filed a Brief in Opposition, as well as a Response to Defendants' Statement of Facts and Statement of Additional Material Facts. (Docket Nos. 23, 24). Defendants filed a Reply Brief and Response to Plaintiff's Statement of Additional Material Facts on May 26, 2007. (Docket Nos. 25, 26). Defendants' Motion is now ripe for my review.

II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56

---

[4] See also supra, n.2.

[5] A copy of the Empire Fire and Marine Insurance Policy is attached as Exhibit B to Defendants' Answer and Affirmative Defenses. (Docket No. 4).

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the nonmoving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

### III. LEGAL ANALYSIS

#### A. BREACH OF CONTRACT CLAIM AGAINST ENTERPRISE (COUNT I)

In Count I of the Complaint, Plaintiffs argue that Defendant Enterprise breached the rental agreement that Enterprise and Lawrence Kosko entered into dated September 24, 2005 as well as the duty of good faith and fair dealing implicit in that agreement. Defendants argue that summary judgment in their favor is appropriate because Plaintiffs are unable to point to any provision of the rental agreement that Enterprise breached or to show a breach of the covenant of good faith and fair dealing. I agree.

As an initial matter, Enterprise is not the insurer in this case. The only contract involving Enterprise is the rental agreement. See Defs.' App., Ex. 1. Although Mr. Kosko elected to purchase the optional personal accident insurance in connection with his automobile rental, the rental agreement clearly states that he was purchasing insurance issued by Empire Fire and Marine and that the coverage was subject to the terms and conditions of the Empire Fire and Marine insurance policy. See id. ¶ 17. Thus, to the extent Plaintiffs' arguments relate to alleged misconduct of the insurer in processing Plaintiff's claim, such arguments are not evidence of a breach of contract or the covenant of good faith and fair dealing by Enterprise.

Second, Plaintiffs have not pointed to any written provision of the rental agreement that Enterprise breached. Enterprise's primary duty under the contract was to provide a rental vehicle to Mr. Kosko in exchange for payment of a rental fee. Plaintiffs do not dispute that Enterprise met this obligation. Although the agreement also requires the parties to comply with any other listed terms and conditions, Plaintiffs have not identified any such express terms or conditions that Enterprise allegedly violated.[6]

Finally, there is no evidence to support Plaintiffs' claim that Enterprise breached any implied contractual duty of good faith and fair dealing. Courts applying Pennsylvania law "have cited Restatement (Second) of Contracts § 205 for the proposition that every contract has an implied term that the parties will perform their duties in good faith." Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000). These courts primarily "have utilized the good faith duty as an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action, but that duty is not divorced from the specific clauses of the contract and cannot be used to override an express contractual term." Id. A party to a contract breaches the duty of good faith "if it evades the spirit of the bargain, acts with a lack of diligence, willfully renders

---

[6] The rental agreement also provides, inter alia, that "[i]f [Enterprise] breaches any of its obligations under this Agreement . . . . and if [Enterprise] is liable under applicable law for such breach . . . , [Enterprise's] sole liability to Renter and Renter's sole remedy is limited to the substitution of another similar Vehicle by [Enterprise] to Renter and to recovery by Renter of the pro rata daily rental rate for the period in which Renter did not have use of Vehicle or substitute Vehicle. RENTER WAIVES ALL CLAIMS FOR CONSEQUENTIAL, PUNITIVE, AND INCIDENTAL DAMAGES THAT MIGHT OTHERWISE BE AVAILABLE TO RENTER. SUCH DAMAGES ARE EXCLUDED AND NOT AVAILABLE TO RENTER." Defs.' App., Ex. 1, ¶ 15.

8

imperfect performance, abuses the power to specify terms, interferes with or fails to cooperate in the other party's performance, or exercises contractually authorized discretion in an unreasonable manner." Berks Mut. Leasing Corp. v. Travelers Prop. Cas., No. 01-CV-6784, 2002 WL 31761419, at *3 (E.D. Pa. Dec. 9, 2002). In applying these principles, however, courts must proceed with caution or else "the doctrine could become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements." Northview Motors, 227 F.3d at 92.

Here, Plaintiff has not pointed to any record evidence to support a violation of Enterprise's implied duty of good faith. Indeed, the bulk of Plaintiffs' arguments focus on the conduct of Cambridge and the insurer in processing Plaintiffs' PAI claim. As set forth above, however, Enterprise is not the insurer in this case and cannot be liable for insurer bad faith.[7] Plaintiffs' only allegation specific to Enterprise is that Enterprise was in control and possession of information which would have assisted Cambridge in determining the Koskos' right to PAI coverage, but that Enterprise did not share that information with Cambridge until Cambridge requested it in 2006. Pls.' Opp. Br. at 5. Plaintiffs argue that Enterprise's alleged failure to share its information with Cambridge contributed to the delay in payment of the PAI claims. Id. at 6.

Even if true, however, these facts do not support a breach of contract claim against Enterprise. As set forth above, the only provisions of the rental agreement

---

[7] In any event, there is no evidence of insurer bad faith in this case. See infra Section III.D.

9

related to PAI simply provide the renter with the option to purchase PAI issued by Empire Fire and Marine. Although the agreement summarizes the terms of the PAI coverage, it also makes clear that Enterprise is not the insurer and that all claims must be submitted directly to Cambridge. See Defs.' App. (Docket No. 22), Ex. 1, ¶ 17. Nothing in the agreement requires Enterprise to provide a third party with any information related to an actual or potential PAI claim, nor can I reasonably imply such a duty arising from the terms of the agreement, let alone a duty to provide such information sua sponte, absent a request from Plaintiffs, Cambridge, or Empire Fire and Marine. To the extent Enterprise had any duty to provide information upon request, the record evidence shows that Enterprise promptly complied with such requests once made.

Further, and in any event, there is no evidence that Enterprise's alleged failure to provide Cambridge with information contributed to any delay in processing Plaintiffs' PAI claim. The only specific documents Plaintiffs identify in their brief as having been in Enterprise's possession include Enterprise's DX report (accident report) and Anchorage newspaper articles describing the Koskos' accident. Pls.' Opp. Br. at 3-4. Plaintiffs do not allege, nor is there any evidence, that Enterprise possessed the police accident report or the coroner's report for Mr. Kosko. As set forth in Section III.D, infra, it was reasonable for Cambridge and/or the insurer to require these additional documents prior to paying Plaintiffs' claim. Thus, Plaintiffs' argument that the insurer should have paid Plaintiffs' claim earlier based upon newspaper accounts and Enterprise's DX report is without merit. In short,

there is no evidence that Enterprise evaded the spirit of the rental agreement, acted with a lack of diligence, willfully rendered imperfect performance, abused the power to specify terms, interfered with or failed to cooperate in the other party's performance, or otherwise acted in bad faith. Thus, to the extent that Enterprise owed Plaintiffs a duty of good faith arising out of the rental agreement, Enterprise did not breach such duty under the undisputed facts in this case.[8]

For all of these reasons, I do not find any evidence sufficient to create a genuine issue of material fact as to Plaintiffs' breach of contract claims against Enterprise. Accordingly, Defendants' Motion for Summary Judgment is granted with respect to Count I of Plaintiffs' Complaint.

B. UTPCPL CLAIM AGAINST ALL DEFENDANTS (COUNT II)

Plaintiffs agree in their Brief in Opposition that their Pennsylvania UTPCPL claim against all Defendants should be dismissed. See Pls.' Opp. Br. (Docket No. 24) at 6, n.1. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiffs' UTPCPL claim (Count II of Plaintiffs' Complaint) is granted.

C. PENNSYLVANIA UNFAIR INSURANCE PRACTICES ACT AND ALASKA UNFAIR CLAIMS SETTLEMENT PRACTICES ACT CLAIMS AGAINST ALL DEFENDANTS (COUNTS III, IV)

Plaintiffs do not respond in their Brief in Opposition to Defendants'

---

[8] To the extent Plaintiffs also argue that Enterprise had a duty to provide the Koskos' family with a copy of a claim form for PAI benefits prior to Attorney D'Emilio contacting Enterprise in mid-November 2005, such argument is meritless. The rental agreement requires the renter to obtain a claim form and submit it directly to Cambridge. It is undisputed that an Enterprise representative told Attorney D'Emilio in early-November 2005 that Mr. Kosko had purchased PAI insurance with death benefits. Once Attorney D'Emilio faxed his letter of representation to Enterprise in mid-November, Enterprise provided him with a blank claim form within four days of the request (and less than two months after the accident). Even when viewed in the light most favorable to Plaintiffs, these facts do not support a claim for breach of contract based on violation of the duty of good faith.

arguments as to why summary judgment in Defendants' favor is appropriate with respect to Plaintiffs' claims under the Pennsylvania Unfair Insurance Practices Act and Alaska Unfair Claims Settlement Practices Act.  Accordingly, I must presume that Plaintiffs no longer intend to pursue these claims and grant Defendants' Motion for Summary Judgment as to these claims.  See also Fed. R. Civ. P. 56(e) (non-moving party may not rest on allegations of complaint, but must, by affidavits or as otherwise provided, set forth specific facts showing a genuine issue for trial).

Moreover, and in any event, I agree with Defendants that there is no private right of action under either the Pennsylvania or Alaska acts at issue.  See 40 Pa. Stat. § 1171.7; Alaska Stat. § 21.36.125(b); see also, e.g., Leach v. Northwestern Mut. Ins. Co., No. Civ. A. 01-2364, 2005 WL 3533116, at *12 (W.D. Pa. Dec. 22, 2005); D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co., 431 A.2d 966, 969-70 (Pa. 1981); O.K. Lumber Co. v. Providence Wash. Ins. Co., 759 P.2d 523, 527 (Alaska 1988).  For this reason as well, Defendants' Motion for Summary Judgment is granted as to Counts III and IV of Plaintiffs' Complaint.

D.  BAD FAITH CLAIM AGAINST DEFENDANTS CAMBRIDGE, EMPIRE FIRE AND MARINE, AND EMPIRE INDEMNITY (COUNT V)

Defendants argue that summary judgment in their favor is appropriate with respect to Plaintiffs' bad faith claim against Defendants Cambridge, Empire Fire and Marine, and Empire Indemnity.  Specifically, Defendants contend that Cambridge and Empire Indemnity are not the insurers and, therefore, are improper defendants as to the bad faith claim.  Defendants further argue that the undisputed material facts do not support a bad faith claim against Empire Fire and Marine as a matter of

law.  This portion of Defendants' Motion is granted.

1. <u>Identity of Insurer</u>

As an initial matter, Plaintiffs agree in their opposition brief that third-party administrators such as Defendant Cambridge are not insurers within the meaning of the Pennsylvania insurance bad faith statute.  <u>See</u> Pls.' Opp. Br. at 7, n.2.  Because the bad faith statute only applies to insurers, <u>see</u> 42 Pa. Cons. Stat. Ann. § 8371, Defendants' Motion for Summary Judgment is granted with respect to Defendant Cambridge.

After review of the record evidence, it appears that Empire Indemnity likewise is not the insurer in this case.  The Enterprise rental agreement lists Empire Fire and Marine as the issuer of the insurance policy, and the PAI policy itself appears to be an Empire Fire and Marine document.  <u>See</u> Defs.' App. (Docket No. 22), Exs. 1, 4.  In addition, Plaintiffs admit in their Response to Defendants' Concise Statement of Material Facts that the PAI policy in question was underwritten by Empire Fire and Marine.  <u>See</u> Pls.' Resp. to Defs.' St. Mat. Facts (Docket No. 23) ¶ 28.  Empire Fire and Marine likewise fully admits that it is the insurer in this case.  <u>See</u> Complaint ¶ 5; Answer ¶ 1.  For these reasons, Defendants' Motion for Summary Judgment is granted with respect to Defendant Empire Indemnity.

Plaintiffs argue that the identity of the insurer is unclear because the certification attached to the front of the policy lists both Empire Fire and Marine and Empire Indemnity. Pls.' Opp. Br. at 7; <u>see also</u> Pls.' St. Add'l Mat. Facts (Docket No. 23), Ex. I.  As Defendants point out, however, the certification at issue (which does

not specifically identify Empire Indemnity as the insurer) appears to be a form cover page and is not a part of the PAI policy itself. Even if this document were sufficient to create a genuine issue of material fact as to the identity of the insurer, however, Plaintiffs' bad faith claim cannot survive summary judgment on its merits for the reasons set forth below.

   2. <u>Merits of Plaintiffs' Bad Faith Claim</u>

Defendants argue that the bad faith claim fails because Plaintiffs cannot establish that the company acted in bad faith in processing their claim. To the contrary, the undisputed evidence shows that Empire Fire and Marine acted reasonably and in a timely manner in paying Plaintiffs' claim in full. I agree.

The Pennsylvania statute governing bad faith insurance actions provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.

Although the statute does not define the term "bad faith," the Court of Appeals for the Third Circuit has predicted that the Pennsylvania Supreme Court would adopt the definition set forth by the Pennsylvania Superior Court in <u>Terletsky</u>

v. Prudential Property & Casualty Insurance Co., 649 A.2d 680 (1984). Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121 (3d Cir. 2005) (citing Keefe v. Prudential Prop. & Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000)). In Terletsky, the court held that to recover on a bad faith claim, the insured must prove: (1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. 649 A.2d at 688. Defendants do not contest that an insurer may be held liable for a bad faith delay (as opposed to denial) of coverage under the Terletsky standard. See, e.g., Wiener v. Banner Life Ins. Co., Civ. A. No. 02-1351, 2003 U.S. Dist. Lexis 4957, at *20 (E.D. Pa. Feb. 28, 2003) (to recover for bad faith delay, insured must show that insurer had no reasonable basis for delay of coverage and defendant delayed coverage with knowledge or reckless disregard of unreasonable basis). Mere negligence or bad judgment on the part of the insurer, however, is insufficient to constitute bad faith. Terletsky, 649 A.2d at 688.

Pennsylvania law requires the insured to prove bad faith by clear and convincing evidence. Babayan, 430 F.3d at 137 (citing Terletsky, 649 A.2d at 688). "At the summary judgment stage, the insured's burden in opposing a summary judgment motion is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'" Id. (quoting Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999)), aff'd, 234 F.3d 1265 (3d Cir. 2000).

Here, no reasonable jury could conclude that Plaintiffs have shown, by clear

15

and convincing evidence, that Empire Fire and Marine acted in bad faith in processing their claim. As an initial matter, Empire Fire and Marine paid Plaintiffs' claim in full within seven months of the Koskos' accident, less than three months after Attorney D'Emilio submitted the claim form for Lawrence Kosko, less than two months after Attorney D'Emilio submitted the claim form for Sue Kosko, and within one month after Cambridge received the official police accident report. To the extent these relatively short time periods even qualify as a "delay" in processing the claim, such delay was far from unreasonable.

Indeed, courts within this circuit have held that similar and, in some cases, far longer time periods did not support a claim for bad faith delay. See, e.g., Weiner, 2005 U.S. Dist. Lexis at **20-22 (insurer's payment of plaintiff's life insurance claim less than four months after plaintiff signed a release for insurer to examine decedent's medical records and three months after insurer received official report of death indicating death was accidental was not unreasonable); Quaciari v. Allstate Ins. Co., 998 F. Supp. 578, 579-80 (E.D. Pa.) (approximate 13-month delay in resolving uninsured motorist claim not sufficient to establish bad faith), aff'd, 172 F.3d 860 (3d Cir. 1998); Segall v. Liberty Mut. Ins. Co., No. Civ. A. 99-6400, 2000 WL 1694026, at *2 (E.D. Pa. Nov. 9, 2000) (although defendant may have been able to resolve claim sooner, six to eleven month delay was not sufficient to support bad faith claim); Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567, 572 (E.D. Pa. 2000) (fifteen months not bad faith delay), aff'd, 261 F.3d 495 (3d Cir. 2001). Although each bad-faith claim turns on its particular facts, I find that, under the facts of this case, even when viewed in the

light most favorable to Plaintiffs, there is no evidence of a bad faith delay. If anything, Defendant here acted more swiftly and more reasonably than the insurers in the above-cited cases.[9]

Plaintiffs argue that despite the relatively short turn-around period, Defendant nevertheless acted in bad faith because it possessed adequate information to pay the claim prior to receiving the police accident report and coroner's reports and, therefore, it was unnecessary and unreasonable for Defendant to wait to receive those reports before paying the claim. In particular, Plaintiffs note that Enterprise knew prior to November 2005 (when Attorney D'Emilio first requested a claim form) that the Koskos had been killed in an accident while driving an Enterprise vehicle and that Mr. Kosko had purchased PAI insurance; and that Enterprise and/or Cambridge possessed Enterprise's DX (accident) report and Anchorage newspaper articles describing the Koskos' accident.

I disagree that it was unreasonable for Defendant to require the police accident report and/or coroner's reports in this case prior to paying Plaintiffs' claims. The PAI claim form specifically instructs the claimant to attach, inter alia, a copy of the rental agency accident report and the police accident report to the form, as well as a copy of the coroner's report if the deceased was the renter of the vehicle. See Defs.' App. (Docket No. 22), Exs. 2, 3. Thus, Plaintiffs were fully aware, or should have been aware, that Cambridge routinely required these documents

---

[9] I further note that a significant portion of the "delay" is attributable to Plaintiffs and/or Attorney D'Emilio who did not file a claim for Mr. Kosko until February 2006 and for Mrs. Kosko until March 2006 despite having received a blank claim form from Enterprise in November 2005.

17

as part of its review process. Moreover, when Plaintiffs' attorney failed to attach the police accident report to Mr. Kosko's claim form, Cambridge did not summarily deny or sit on the claim, but rather took the initiative to promptly order the report from ChoicePoint, its vendor.[10] Furthermore, it was more than reasonable for the insurer to require these official reports before paying the claim. Enterprise's accident report was prepared only a day after the accident and contains minimal information, see Docket No. 23, Ex. B, and it would be unreasonable to require an insurer to limit its investigation to newspaper reports and other unofficial accounts of the accident. In this regard, I agree with Defendants that "such an investigation would almost certainly be argued to constitute bad faith if the insurer had denied the Plaintiffs' PAI claims on such flimsy and uncorroborated evidence." Defs.' Reply Br. at 4.

In short, based on the evidence of record, I find that no reasonable jury could conclude that Empire Fire and Marine acted in bad faith in this case. To the contrary, the undisputed evidence indicates that Empire Fire and Marine acted more than reasonably in promptly processing, and paying in full, Plaintiffs' PAI claims. Accordingly, Defendants' motion for summary judgment as to Plaintiffs' bad

---

[10] The parties also dispute whether Attorney D'Emilio attached a copy of Mr. Kosko's coroner's report to his claim form in February 2006. Although Attorney D'Emilio testified that he did attach the report to the claim form, Defendants allege that they did not receive Mr. Kosko's coroner's report until Attorney D'Emilio faxed a copy at Cambridge's request on April 7, 2006. Even if disputed, however, this fact is immaterial. Regardless of when Cambridge received Mr. Kosko's coroner's report, it is undisputed that Cambridge did not receive Sue Kosko's claim form until March 15, 2006 or the police accident report until March 23, 2006, and that Mr. Kosko's PAI benefit check was issued approximately a month thereafter. Even if the insurer had all the requisite information as of February 3, 2006 (which it did not), a two and a half month delay in paying the claim would not have been unreasonable.

faith claim is granted.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is granted in all respects.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER OF COURT

AND NOW, this **13th** day of July, 2007, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ORDERED that Defendants' Motion for Summary Judgment (Docket No. 19) is GRANTED.  Judgment is entered in favor of Defendant and against Plaintiff.  This case is closed forthwith.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge